IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DUANE "DOG" CHAPMAN and BETH CHAPMAN, <br><br> Plaintiffs, <br><br> v. <br><br> MAUREEN KEDES KRUTONOG fka MAUREEN KEDES; VERTEX COMMUNICATIONS, LLC, a limited liability company, DOE DEFENDANTS 1-20, DOE CORPORATIONS, 1-20, and DOE PARTNERSHIPS 1-20, <br><br> Defendants. | CIVIL NO. CV08-00552 HG LEK (Contract) <br><br> **MEMORANDUM IN SUPPORT OF MOTION** |

## MEMORANDUM IN SUPPORT OF MOTION

### I.  INTRODUCTION

Plaintiffs DUANE "DOG" CHAPMAN and BETH CHAPMAN (collectively "the CHAPMANS" or "Plaintiffs") seek an order from this Court permitting them to conduct limited jurisdictional discovery before the Court hears and rules on the FRCP 12(B)(2) Motion brought by Defendants MAUREEN KEDES KRUTONOG fka MAUREEN KEDES ("KEDES") and VERTEX COMMUNICATIONS, LLC, a limited liability company ("VERTEX") (collectively "Defendants") to dismiss the complaint for lack of personal jurisdiction (the "Motion"), and prior to Plaintiffs' deadline to oppose the Motion.[1]  Jurisdictional discovery is warranted in this case

---

[1] Defendants' 12(B)(2) Motion, which was filed on December 15, 2008, is scheduled to be heard by this Court on March 2, 2009 at 10:30 a.m.

1

because the facts impacting the question of Hawaii's exercise of personal jurisdiction over Defendants are heavily contested.

The declaration of KEDES submitted to this Court in support of the Motion denies any significant contacts with the state of Hawaii. However, to the contrary, Plaintiffs have colorable evidence that Defendants' contacts with the forum are substantial. Furthermore, Plaintiffs are aware of specific areas of inquiry that are likely to lead to significant additional evidence of contacts between Defendants and Hawaii that would render the exercise of this Court's jurisdiction over Defendants imminently reasonable. Because Plaintiffs dispute KEDES' purported lack of contacts with the forum state of Hawaii, jurisdictional discovery is appropriate under well-established law. Therefore, Plaintiffs respectfully request that the Court issue an order granting limited jurisdictional discovery.

The requested jurisdictional discovery is limited to one set of document requests, one set of special interrogatories, a subpoena for documents issued to the Kahala Hotel and Resort in Honolulu, Hawaii, and the short depositions of Defendant MAUREEN KEDES ("KEDES"), her husband Boris Krutonog, and KEDES' assistant, Heather Hyde (who has personal knowledge of KEDES' travel and schedule during the relevant time period). Plaintiffs also request the deposition of the Corporate Designee of "Harry Witz and/or Harry J's, LLC" (owners of an unidentified Kauai restaurant referenced in ¶15(a) of KEDES declaration filed in support of Defendants Motion to Dismiss Pursuant to FRCP 12(B)(2)). The depositions will be limited to a maximum of four hours each and will be taken in the County where each deponent resides.

II.  **SUMMARY OF RELEVANT BACKGROUND**

Plaintiffs DUANE "DOG" CHAPMAN and his wife, Plaintiff BETH CHAPMAN, are the stars of the renowned A&E television program, *Dog the Bounty Hunter* (the "Program"). (BETH CHAPMAN Decl. ¶ 3[2]). The CHAPMANS reside in Honolulu, Hawaii and the Program is primarily filmed in Honolulu. (BETH CHAPMAN Decl. ¶ 4).

Beginning in approximately mid-March 2005, Plaintiffs' company, Dog Corporation, contracted with VERTEX for KEDES and her company to furnish public relations services for the benefit of the CHAPMANS and the Program. (BETH CHAPMAN Decl. ¶ 5). After the contract expired less than three months later in June 2005, Defendants continued to render publicity services for Plaintiffs and the Program without a contract until approximately May 2006 when the CHAPMANS terminated Defendants' services. (BETH CHAPMAN Decl. ¶ 5).

After terminating the services of KEDES and her company, KEDES embarked upon a campaign to damage Plaintiffs' reputation by, among other things, fabricating stories and selling confidential stories about Plaintiffs to the tabloid media. Accordingly, on October 23, 2008, Plaintiffs brought the instant tort action against Plaintiffs for breach of fiduciary duty, fraudulent concealment, and negligent or intentional misrepresentation based primarily on the wrongful conduct in which KEDES engaged following her termination by Plaintiffs. (BETH CHAPMAN Decl. ¶ 6).

---

[2] The "BETH CHAPMAN Decl." refers to the Declaration of Beth Chapman dated January 16, 2009  An facsimile copy of the BETH CHAPMAN Decl. is attached hereto and made part of by reference hereof.  The original BETH CHAPMAN Decl. will be submitted to the Court upon receipt of same.

3

In response to the Complaint, Defendants filed their 12(B)(2) Motion before this Court claiming that the State of Hawaii cannot exercise personal jurisdiction over Defendants. Defendants' Motion is based entirely on the declaration of KEDES (the "KEDES Declaration"), in which she claims she has no significant contacts with the state of Hawaii (*See* KEDES Declaration, Paragraph 15). However, in her declaration, KEDES fails to inform the Court that she was the publicist for the Program, and that her husband, Boris Krutonog ("Krutonog"), was Plaintiff DUANE "DOG" CHAPMAN's manager. (BETH CHAPMAN Decl. ¶ 7). KEDES also fails to inform the Court that she and Krutonog traveled to Honolulu on several occasions in connection with their work on the Program over approximately a twelve (12) to fifteen (15) month period from early 2005 to mid 2006 (BETH CHAPMAN Decl. ¶ 7). Additionally, among other things, evidence exists that KEDES initiated frequent, if not daily, telephone and email contact with the CHAPMANS in Hawaii, mailed press kits and promotional materials to the CHAPMANS in Hawaii, and that KEDES has also frequently vacationed on the Islands of Oahu, Maui and on The Big Island with her family. (BETH CHAPMAN Decl. ¶ 8).

Aside from the foregoing substantial contacts, any mention of which are notably absent from her declaration, the KEDES Declaration also raises questions about other contacts KEDES had with Hawaii. In particular, KEDES attests to a contract she and VERTEX entered into to promote a "new restaurant" on the Island of Kauai (*See* KEDES Declaration ¶15(a)) but offers no facts regarding what services she rendered for this restaurant or if any such services caused her to travel to Hawaii or otherwise avail herself of the forum. Accordingly, the CHAPMANS should have the opportunity to propound discovery to KEDES and question KEDES and other percipient witnesses regarding KEDES' involvement with this business venture. Clearly, there is a strong

possibility that discovery into her relationship with this unidentified Kauai restaurant will yield additional facts that further demonstrate that jurisdiction over Defendants is proper.

### III. THE COURT HAS BROAD DISCRETION TO ORDER JURISDICTIONAL DISCOVERY

A district court has broad discretion to "permit discovery to aid in determining whether it has in personum jurisdiction." *Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285, n.1 (9th Cir. 1977) (citations omitted). A court should allow a plaintiff to conduct jurisdictional discovery "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977).

The Ninth Circuit has held that denying jurisdictional discovery where such discovery has the possibility of demonstrating a basis for jurisdiction is an abuse of discretion. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (holding that it was an abuse of discretion for the trial court to deny plaintiff's motion for jurisdictional discovery without allowing plaintiff the opportunity to develop the record to make a prima facie showing of facts supporting jurisdiction); *see also Business Buyer Directory, LLC. v Northwest Capital Appreciation*, Civ. No. 08-1606-PHX-DGC, 2008 WL 5082264 (D. Ariz., Nov. 26, 2008) (quoting *Harris Rutsky & Co.*, 328 F.3d at 1135).

In order to obtain factual jurisdictional discovery, at most, a plaintiff need only make a "colorable" showing that the Court can exercise personal jurisdiction over the defendant. *Mitan v. Feeny*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007). This "colorable" showing has been held by courts to be "something less than a *prima facie* showing, and could be equated as requiring the plaintiff to come forward with 'some evidence' tending to establish personal jurisdiction over the

5

defendant. *Id.* (quoting *eMag Solutions, LLC v. Toda Kogyo Corp.*, 2006 WL 3783548 at *2 (N.D. Cal. Dec. 21, 2006). However, at least one district court within the Ninth Circuit has ruled that a plaintiff is not even obligated to demonstrate a *prima facie* showing of personal jurisdiction before it can obtain jurisdictional discovery because "it would . . . be counterintuitive to require a plaintiff, prior to conducting discovery, to meet the same burden that would be required to defeat a motion to dismiss." *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672-73 (S.D. Cal. 2001).

As set forth herein and the accompanying declaration of BETH CHAPMAN, the CHAPMANS have set forth more than sufficient evidence to make a "colorable" showing of Defendants' contacts with Hawaii (if such showing is even required by the Court). Therefore, the Court should unquestionably permit the limited jurisdictional discovery requested.

## IV.  THE COURT SHOULD GRANT PLAINTIFFS THE OPPORTUNITY TO CONDUCT LIMITED AND SPECIFIC JURISDICTIONAL DISCOVERY

Prior to the deadline to file their opposition to Defendants' Motion and the Court's hearing thereon, for the reasons set forth below, Plaintiffs respectfully request that the Court grant them sixty (60) days to conduct jurisdictional discovery, limited to one set of document requests, one set of special interrogatories, a subpoena for documents issued to the Kahala Hotel and Resort in Honolulu, Hawaii, and the short depositions of KEDES, Krutonog, and KEDES' assistant, Heather Hyde (who has personal knowledge of KEDES' travel and schedule during the relevant time period). Plaintiffs also request the deposition of the Corporate Designee of "Harry Witz and/or Harry J's, LLC" (owners of the unidentified Kauai restaurant, *see* KEDES Declaration ¶15(a)). The depositions will be limited to a maximum of four hours each and will be taken in the County where each deponent resides. Ordering this discovery will allow

Plaintiffs to obtain admissible and corroborative evidence of the jurisdictional facts identified herein, which is necessary in order to oppose Defendants' Motion.[3]

### A. Plaintiffs Have Submitted Evidence That Supports That This Court Can Properly Exercise Jurisdiction Over Defendants.

Plaintiffs can present more than a "colorable" showing, and even more than a *prima facie* showing, that this Court can properly exercise jurisdiction over Defendants. Between approximately March 2005 and May 2006, KEDES traveled to Hawaii at least three times in connection with her work as a publicist for Plaintiffs and the Program. Two of these times KEDES stayed at the Kahala Hotel and Resort in Honolulu, Hawaii. (BETH CHAPMAN Decl. ¶ 9). The third time, KEDES traveled to Hawaii in May 2006 in her capacity as a publicist for Plaintiffs' wedding, which took place and was filmed on The Big Island and was released on DVD in connection with the Program. (BETH CHAPMAN Decl. ¶ 9). Each of these work-related trips KEDES took was paid for by the A&E network. (BETH CHAPMAN Decl. ¶ 9). On each of these trips, KEDES acted in her capacity as Plaintiffs' publicist. (BETH CHAPMAN Decl. ¶ 9).[4]

---

[3] Plaintiffs' proposed First Request for Production of Documents to Defendants and First Request for Answers to Interrogatories to Defendants, which are limited to seeking documents and information directly related to the jurisdictional dispute are attached to the accompanying declaration of Philip R. Brown as Exhibits "A" and "B" respectively.

[4] Note, however, these three trips to Hawaii are only those that Plaintiff BETH CHAPMAN can definitively recall. In his capacity as Plaintiff DUANE "DOG" CHAPMAN's manager, KEDES' husband, Boris Krutonog, was on location in Hawaii over one hundred and seventy five (175) days for the purpose of acting as a liaison with the producers of the Program and the A&E network. (BETH CHAPMAN Decl. ¶ 7). It is very possible that KEDES traveled with her husband and was present in Hawaii on one or more of these days. Such information would be uncovered through the requested jurisdictional discovery.

7

Furthermore, in her capacity as Plaintiffs' publicist, KEDES initiated frequent, if not daily, telephone contact with Plaintiffs, who work and reside in Honolulu, Hawaii. (BETH CHAPMAN Decl. ¶ 8). In addition, KEDES communicated daily by telephone and email with THE CHAPMAN's public relations assistant, Mona Woods, in Hawaii. (BETH CHAPMAN Decl. ¶ 8). KEDES also had regular email contact with Plaintiffs to their home and office in Honolulu to discuss and confer on publicity related issues. (BETH CHAPMAN Decl. ¶ 8). Additionally, KEDES regularly mailed press kits and promotional materials to the CHAPMANS' home and office in Honolulu, Hawaii. (BETH CHAPMAN Decl. ¶ 8).

During the relevant time period, Heather Hyde was known to be KEDES' assistant and, in her capacity as KEDES' assistant, likely managed KEDES' daily and travel calendars. (BETH CHAPMAN Decl. ¶ 10).

Finally, KEDES frequently vacationed with her family (including her parents and children), in Hawaii on the Islands of Oahu, Maui and on The Big Island. (BETH CHAPMAN Decl. ¶ 10). On one such vacation, in May 2006, following her work-related attendance at Plaintiffs' wedding, KEDES and her family spent two weeks vacationing on The Big Island. (BETH CHAPMAN Decl. ¶ 10). During this time, KEDES' enrolled her children at a camp at the Hilton Waikoloa Village Hotel. (BETH CHAPMAN Decl. ¶ 10).

None of the afore-stated purposeful contacts with the State of Hawaii are mentioned or even alluded to in the KEDES Declaration. Accordingly, jurisdictional discovery is appropriate and necessary to determine the full extent of KEDES' contacts with the State of Hawaii.

    **B.**    **Plaintiffs Should Have The Opportunity To Conduct Discovery Pertaining To Vague Statements Made By Kedes Regarding Her Contacts With The Forum.**

Even putting aside all of the substantial contacts referenced above, Paragraph 15(a) of KEDES Declaration alone renders jurisdictional discovery appropriate. In that Paragraph, KEDES states that in 2003 her company entered into a contract with "Harry Witz and/or Harry J's, LLC" to promote a "new restaurant" on the Island of Kauai (*See* KEDES Declaration ¶15(a)). However, KEDES provides no information regarding how long she rendered publicity services for the restaurant (she states only that the term of the contract was for two months). KEDES also provides no information regarding what services she performed for the restaurant, how many times she traveled to Hawaii to render those services, and what type of telephone, email or other contact she had with her client in Kauai.

Accordingly, it is crucial that Plaintiffs are given the opportunity to develop the record on this issue by propounding discovery on KEDES and questioning KEDES and other percipient witnesses regarding KEDES' involvement with the Kauai restaurant. There is a strong probability that information uncovered during the course of such discovery would afford an additional basis for the Court to exercise personal jurisdiction over KEDES and her company.

**V.**    **THE SUBSTANTIVE ARGUMENTS MADE IN DEFENDANTS' MOTION ARE A TRANSPARENT ATTEMPT TO DOWNPLAY KEDES' SUBSTANTIAL CONTACTS WITH THE STATE OF HAWAII.**

The substantive arguments contained in Defendants' Motion and Plaintiffs' objections to the KEDES Declaration will be fully briefed and addressed at the appropriate time, when Plaintiffs file their formal opposition to the Motion in advance of the hearing date. However,

without prematurely delving too deeply into those issues, it should be noted for the Court that the Motion as a whole, and the entirety of the KEDES Declaration, erroneously focuses on the three-month contract for publicity services (March 14, 2005 through June 6, 2005) between VERTEX and The Dog Corporation, the terms of which are not directly at issue in this case. Plaintiffs have not asserted a claim for breach of contract against Defendants. Rather, they have asserted *tort* claims for breach of fiduciary duty, fraudulent concealment, and negligent and intentional misrepresentation as a result of tortuous acts committed by Defendants after Plaintiffs' terminated the services of KEDES and her company, in or around May 2006.

Accordingly, despite Defendants' arguments to the contrary, personal jurisdiction over Defendants in this action is not entirely governed by the terms of the March 9, 2005 contract. Where that contract was entered, who signed the contract, who the parties to the contract were, etc., have no bearing on whether KEDES and her company have subjected themselves to the jurisdiction of the forum state for the purpose of adjudicating Plaintiffs' tort claims.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs DUANE "DOG" CHAPMAN and BETH CHAPMAN respectfully request that the Court grant Plaintiffs' motion for an order to conduct jurisdictional discovery and allow Plaintiffs (60) days to conduct such jurisdictional discovery, limited to one set of document requests, one set of special interrogatories, a subpoena for

documents issued to the Kahala Hotel and Resort in Honolulu, Hawaii, and the depositions of KEDES, Boris Krutonog, Heather Hyde, and the Corporate Designee of "Harry Witz and/or Harry J's, LLC."

DATED: Honolulu, Hawaii, January 16, 2009.

*/s/ Philip R. Brown*
PHILIP R. BROWN
EFFIE A. STEIGER
MARTIN D. SINGER
*(Admitted Pro Hac Vice)*
PAUL N. SORRELL
*(Admitted Pro Hac Vice)*
Attorneys for Plaintiffs
DUANE "DOG" CHAPMAN
and BETH CHAPMAN